UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PALMER HEENAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et. al.,<br><br>Defendants. | Civil Action No. 25-3343 (RC) |

**MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 1

A. Statutory and Regulatory Background ..... 1

B. Factual Allegations ..... 2

C. Procedural Background ..... 4

Legal Standards ..... 4

I. Rule 12(b)(1) ..... 4

II. Rule 12(b)(6) ..... 5

Argument ..... 6

I. Plaintiffs Cannot Maintain Employment Claims Under 42 U.S.C. § 3617 ..... 6

II. Plaintiffs' Reassignment Did Not Violate 42 U.S.C. § 3617 ..... 9

A. Plaintiffs Do Not Allege They Engaged in a Protected Activity ..... 10

B. Plaintiffs Failed to Plausibly Plead that They Suffered an Adverse Action ..... 11

C. Plaintiffs Failed to Plausibly Plead Causation. ..... 12

Conclusion ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 6, 8

*Bazzi v. Gacki*,
468 F. Supp. 3d 70 (D.D.C. 2020) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ........ 11, 12

*Bush v. Lucas*,
462 U.S. 367–68 (1983) ........ 7

*Campos v. HMK Mortg., LLC*,
458 F. Supp. 3d 517 (N.D. Tex. 2020) ........ 12, 13

*Chambers v. District of Columbia*,
35 F.4th 870 (D.C. Cir. 2022) ........ 12

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) ........ 4

*Erby v. United States*,
424 F. Supp. 2d 180 (D.D.C. 2006) ........ 5

*Evans v. United States*,
18 F. Supp. 2d 1217 (D. Kan. 1998) ........ 8, 9

*Favourite v. 55 Halley St., Inc.*,
381 F. Supp. 3d 266 (S.D.N.Y. 2019) ........ 10

Fed. R. Civ. P. 12 ........ 5

*Gonzalez v. Lee Cnty. Hous. Auth.*,
161 F.3d 1290 (11th Cir. 1998) ........ 10

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
560 F.3d 495 (D.C. Cir. 2009) ........ 7

*Hall v. Lowder Realty Co.*,
160 F. Supp. 2d 1299 (M.D. Ala. 2001) ........ 9, 10

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
937 F. Supp. 2d 18 (D.D.C. 2013) ........ 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 4

*Kris v. Dusseault Fam. Revocable Tr.*,

594 F. Supp. 3d 333 (D.N.H. 2022) .......... 12, 13

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993) .......... 5

*Lindsay v. Wilkie, Civ. A. No. 19-1137*
(TSC), 2020 WL 7059881 (D.D.C. Dec. 1, 2020) .......... 7, 8

*Linkletter v. W. & S. Fin. Grp., Inc.*,
851 F.3d 632 (6th Cir. 2017) .......... 10

*Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*,
741 F. Supp. 2d 222 (D.D.C. 2010) .......... 11

*Lucas v. Am. Fed'n of Gov't Emps.*,
151 F.4th 370 (D.C. Cir. 2025) .......... 7

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) .......... 6, 7

*Ohio House, LLC v. City of Costa Mesa*,
135 F.4th 645 (9th Cir. 2025) .......... 10

*Reese v. Park Place Condo. Homeowners Ass'n I, Civ. A. No. 22-02660*
(CRC), 2023 WL 5833678 (D.D.C. Sept. 8, 2023) .......... 9

*Runnels v. Fed. Bureau of Investigation, Civ. A. No. 25-1202*
(BAH), 2025 WL 3089526 (D.D.C. Nov. 5, 2025) .......... 8

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*,
778 F. Supp. 2d 37 (D.D.C. 2011) .......... 5

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
768 F. Supp. 2d 117 (D.D.C. 2011) .......... 6

*Wardrick v. Fed. Bureau of Prisons, Civ. A.*
No. 19-0184, 2020 WL 1821133 (D.D.C. Apr. 10, 2020) .......... 6

*Watson v. U.S. Dep't of Hous. & Urb. Dev.*,
576 F. Supp. 580 (N.D. Ill. 1983) .......... 8

**Statutes, Rules, and Regulations**

42 U.S.C. § 3601 .......... 1, 2, 3, 4

42 U.S.C. § 3604 .......... 1

42 U.S.C. § 3605 .......... 2

42 U.S.C. § 3610 .......... 2

42 U.S.C. § 3613 .......... 2

42 U.S.C. § 3614 .......... 2

42 U.S.C. § 3617 .......... 4, 6, 8, 9, 10, 11, 12

Rule 12 of Fed. R. Civ. Pro. .......... 4, 5, 6

Defendants, U.S. Department of Housing and Urban Development ("HUD") and Scott Turner, in his official capacity as Secretary of HUD, respectfully move to dismiss the Complaint (ECF No. 1) in this case. Plaintiffs, all current or former attorneys within HUD's Office of General Counsel ("OGC"), challenge their reassignment from the Office of Fair Housing ("OFH") to other areas within OGC. Plaintiffs assert that their reassignments violate the Fair Housing Act ("FHA").

Ultimately, this case is an employment-based disagreement about Plaintiffs' work reassignments and their belief that agency leadership was required to negotiate with them before implementing a reorganization due to staffing needs.

Plaintiffs' Complaint should be dismissed because the Fair Housing Act is not the proper statutory avenue for Plaintiffs' employment claims. And even under the Fair Housing Act, Plaintiffs fail to state a claim of unlawful interference. A proposed order is attached.

## BACKGROUND

### A. Statutory and Regulatory Background

Congress enacted the Fair Housing Act as Title VIII of the Civil Rights Act of 1968. The statute declares a national policy "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. As enacted in 1968, the FHA prohibited discrimination in covered housing-related activities because of race, color, religion, and national origin. Congress amended the FHA in 1974 to add sex, and in 1988 (through the Fair Housing Amendments Act) to add familial status and disability and to strengthen enforcement. HUD currently identifies the FHA's protected characteristics as race, color, national origin, religion, sex (including sexual harassment), familial status, and disability. *See id*. § 3604.

The FHA makes it unlawful to discriminate in the sale or rental of a dwelling, including by refusing to sell or rent, refusing to negotiate, or otherwise making housing unavailable because of a protected characteristic. *See id*. § 3604(a). The statute also prohibits discrimination in the terms,

conditions, or privileges of sale or rental, or in the provision of services or facilities in connection with a dwelling. *See id.* § 3604(b). The FHA separately prohibits discrimination in "residential real estate-related transactions" such as mortgage lending, including discrimination in making such transactions available or in their terms or conditions because of a protected characteristic. *Id.* § 3605.

The FHA provides multiple avenues for enforcement. An aggrieved person may file an administrative complaint with HUD not later than one year after an alleged discriminatory housing practice has occurred or terminated. *See id.* § 3610(a)(1)(A)(i). An aggrieved person may also commence a civil action in an appropriate federal or state court not later than two years after the occurrence or termination of an alleged discriminatory housing practice (or breach of a conciliation agreement), subject to statutory tolling. *See id.* § 3613(a)(1)(A). In addition, the Attorney General may commence a civil action when there is reasonable cause to believe that a person or group is engaged in a pattern or practice of resistance to FHA rights, or when a denial of rights raises an issue of general public importance. *See id.* § 3614(a).

**B. Factual Allegations**

Plaintiffs' allegations are as follows. During the time period covered by the Complaint, Plaintiffs were all attorneys within HUD's Office of General Counsel. *See* Compl. (ECF No. 1) ¶¶ 8-12. "Within OGC, the Office of Fair Housing is one of nine Divisions of OGC headquartered in Washington, DC." *Id.* ¶ 28. "HUD OGC also includes Regional Counsel offices across the country." *Id.* ¶ 29.

While OFH was "the only office at HUD headquarters responsible for affirmative fair housing work," *id.* ¶ 28, "FHA enforcement is included among regional counsel's various responsibilities." *Id.* ¶ 29.

As "part of its work, OFH advises and supports [The Office of Fair Housing and Equal Opportunity ("FHEO")] to enforce the FHA and to ensure that HUD and grantees comply with fair housing requirements." *Id.* ¶ 30. OFH attorneys "serve as fair housing subject matter experts for others across the agency . . . advise[] regional attorneys on their fair housing matters, train[] investigators and regional attorneys, compile[] toolkits, and draft[] guidance documents and fair housing regulations." *Id.* "OFH also serves as fair housing counsel to all of HUD to ensure compliance with the FHA and other civil rights laws." *Id.* "Within OFH, the Enforcement Division is the legal office responsible for affirmative enforcement of the FHA." *Id.* ¶ 31.

"Throughout February and March, Plaintiffs became aware of downsizing efforts and potential Reductions in Force (RIFs) at HUD and OGC." *Id.* ¶ 41. "Plaintiffs and other employees faced growing pressure to resign their jobs through OPM's 'deferred resignation program.'" *Id.* Though the "pressure campaign to force federal employees out of their jobs took place across federal agencies, Plaintiffs . . . believe that OFH was especially targeted because of the office's work enforcing the FHA." *Id.* ¶ 42. Plaintiffs base their belief on an alleged spreadsheet, allegedly circulated among agency leadership, showing "FHEO—the investigatory office responsible for FHA enforcement—would be cut by 77%." *Id.* Of note, Plaintiffs were employees within OFH, not FHEO.

Plaintiffs allege that "agency leadership originally *intended* to separate everyone in OFH by implementing a RIF limited to OFH specifically, but those plans ran into roadblocks." *Id.* ¶ 43 (emphasis added). There is no allegation of the agency conducting a RIF. According to Plaintiffs, "[u]nable to eliminate OFH altogether, OGC officials instead opted to use involuntary reassignments to achieve their goal . . . to significantly reduce the agency's capacity to enforce the Fair Housing Act." *Id.* ¶ 44.

On June 4, 2025, OFH attorneys and attorneys from the Office of Program Enforcement ("OPE") attended a meeting entitled "OGC Skills Gap," where attorneys "were told that, to fill staffing needs, OGC was offering attorneys in OFH and OPE the opportunity to be voluntarily reassigned to a list of other divisions." *Id.* ¶ 50. The agency indicated that "the reassignments were necessary to address staffing shortages elsewhere in the agency." *Id.* ¶ 6.

On June 9, 2025, Plaintiffs "emailed OGC officials to propose a work-sharing plan to meet what OGC officials had described as gaps in coverage, as an alternative to involuntary reassignments in the event there were not enough volunteers." *Id.* ¶ 51. "On June 12, 2025, an OGC official rejected the alternative proposal, stating that office leadership believed asking for volunteers was the best option at that time." *Id.* ¶ 52. On June 23, 2025, after only "one attorney from OFH volunteered to transfer," *id.* ¶ 53, "OGC officials verbally conveyed to the Associate General Counsel for Fair Housing that 10 line attorneys—including four of the Plaintiffs here—would be involuntarily transferred out of OFH." *Id.* ¶ 54.

### C. Procedural Background

Plaintiff filed this action on September 22, 2025, alleging violations of The Fair Housing Act, 42 U.S.C. § 3617, and entitlement to declaratory relief. *Id.* ¶¶ 126-137.

## LEGAL STANDARDS

### I. <u>Rule 12(b)(1)</u>

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the

evidence that the Court possesses jurisdiction. *See, e.g., United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

When a defendant makes a facial challenge under Rule 12(b)(1), the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Motions to dismiss based on a lack of standing are properly considered under Rule 12(b)(1) because standing is a "predicate[] to jurisdiction." *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 75 (D.D.C. 2020).

**II. <u>Rule 12(b)(6)</u>**

A Rule 12(b)(6) motion tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must assume any "well-pleaded factual allegations" in a

complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Furthermore, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Moreover, the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (citation modified). A complaint that "pleads facts that are merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (citation modified; quoting *Twombly*, 550 U.S. at 557). In considering a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Wardrick v. Fed. Bureau of Prisons*, Civ. A. No. 19-0184, 2020 WL 1821133, at *4 (D.D.C. Apr. 10, 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). The Court may also consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 n.2 (D.D.C. 2011) (citation modified; declining to convert motion to dismiss to summary judgment.

## ARGUMENT

### I. Plaintiffs Cannot Maintain Employment Claims Under 42 U.S.C. § 3617

Plaintiffs' claims do not concern federal housing rights under FHA, but rather employment rights as federal employees. Hence, Section 3617 is not the proper avenue for this action.

Plaintiffs are federal employees covered by the Civil Service Reform Act ("CSRA"). *See Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009). The "CSRA is comprehensive: It regulates virtually every aspect of federal employment and prescribes in great

detail the protections and remedies applicable to adverse personnel actions, "including the availability of administrative and judicial review." *Id.* (citation modified). "The CSRA is also exclusive: It constitutes the remedial regime for federal employment and personnel complaints." *Id.* "[E]xcept where Congress specifies otherwise, the Civil Service Reform Act is the proper statutory vehicle for covered federal employees to challenge personnel actions by their employers." *Id.*; *see also Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("[T]he CSRA is the exclusive avenue for suit for federal employees, even if the plaintiff cannot prevail in a claim under the CSRA.") (citation modified). "The CSRA generally directs claims concerning personnel actions first to the Merit Systems Protection Board, and then to the Federal Circuit for judicial review." *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 375 (D.C. Cir. 2025). Unlike Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act, the CSRA does not provide an FHA carve out that would allow employment claims based in FHA to be pursued outside of the CSRA process. *See id.* at 379 (citing5 U.S.C. § 2302 (d)) (The CSRA "explicitly ensures that [federal] employees may nevertheless concurrently bring claims under Title VII and the Rehabilitation Act in district court.").

"Because [Plaintiffs'] claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, . . . it would be inappropriate for [the Court] to supplement that regulatory scheme with a new judicial remedy." *Bush v. Lucas*, 462 U.S. 367, 367–68 (1983); *see also Lindsay v. Wilkie*, Civ. A. No. 19-1137 (TSC), 2020 WL 7059881, at *4 (D.D.C. Dec. 1, 2020) (citing *United States v. Fausto*, 484 U.S. 439, 455 (1988) ("Here, the Civil Service Reform Act, a comprehensive system for reviewing personnel actions taken against federal employees . . . provides an alternate provision under which Plaintiff could seek redress.") (citation modified).

In this case, Plaintiffs were attorneys within HUD's OGC OFH. *See* Compl. ¶¶ 8-12. Because of staffing shortages elsewhere in OGC, HUD reassigned a select number of attorneys. *See id*. ¶ 6. While Plaintiffs spend a considerable amount of pages making conclusory allegations about the motivations of HUD leadership, these allegations, even if viewed as true, *see Iqbal*, 556 U.S. at 679, do not set forth a housing violation claim. Thus, the "personnel actions brought by [Plaintiffs] are subject to the CSRA's judicial-review restrictions, even if [Plaintiffs] generally cannot avail themselves of the CSRA's procedures." *Runnels v. Fed. Bureau of Investigation*, Civ. A. No. 25-1202 (BAH), 2025 WL 3089526, at *4 (D.D.C. Nov. 5, 2025).

While Plaintiffs present a seemingly novel use of federal housing law in an effort to do an end run around the CSRA, courts that have dealt with similar employment actions, where plaintiffs attempted to raise a "unlawful interference" claim in an otherwise clear employment dispute, have dismissed those actions. *See Watson v. U.S. Dep't of Hous. & Urb. Dev*., 576 F. Supp. 580 (N.D. Ill. 1983); *Evans v. United States*, 18 F. Supp. 2d 1217 (D. Kan. 1998).

In *Watson*, a HUD employee filed a civil action, pursuant to Section 3617, after he was transferred "from his position as HUD Regional Director of the Office of Fair Housing in Chicago to the position of Director of Debt Management at the HUD Regional Office in Seattle." *Watson*, 576 F. Supp. at 582. Like Plaintiffs, the *Watson* plaintiff alleged he was transferred "because of his 'aggressive and successful' enforcement of the fair housing laws.'" *Id.* at 586. The court dismissed his claim, finding that his "claim [arose] out of his employment with the federal government . . . [and the plaintiff had] administrative remedies available before the [Office of Special Counsel of the MSPB]" and, if terminated for failing to relocate, "the full procedural and substantive protections of the CSRA." *Id.* at 587.

In *Evans*, a former employee with the United States Penitentiary, which "owned and operated residential housing, which it rented to employees" brought a Section 3617 claim, alleging that he was subject to "adverse employment conditions" after encouraging another employee to "pursue a charge of discrimination." *Evans*, 18 F. Supp. 2d at 1217–18. Citing *Steele v. United States*, 19 F.3d 531, 532 (10th Cir.1994), the *Evans* court held that "it is evident that the CSRA precludes plaintiff from bringing this action under the Fair Housing Act and in federal district court." *Id.* at 1219. The court found the plaintiff's "request for judicial review of [his employment based FHA] claim directly contradicts the purpose of the CSRA, which was designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* "Allowing this case to proceed would not only frustrate the procedures of the CSRA, but would also ignore precedent." *Id.*

Because Congress has created a comprehensive remedial scheme via the CSRA, whereby federal employees can bring employment actions in accordance with the provisions of that statute, Plaintiffs' FHA claims concerning their reassignments must be dismissed.

## II. <u>Plaintiffs' Reassignment Did Not Violate 42 U.S.C. § 3617</u>

Even if the Court were to entertain Plaintiffs' employment claims pursuant to Section 3617, such claims should still be dismissed.

"Section 3617 has been interpreted to prohibit retaliation against employees who advocate for the fair-housing rights of others." *Hall v. Lowder Realty Co.*, 160 F. Supp. 2d 1299, 1321 (M.D. Ala. 2001). To state a claim under Section 3617, plaintiffs "must establish that (1) [they] engaged in protected activity, (2) the defendant took an adverse action against [them], and (3) a causal links exists between the protected activity and the adverse action." *Reese v. Park Place Condo. Homeowners Ass'n I*, Civ. A. No. 22-02660 (CRC), 2023 WL 5833678, at *4 (D.D.C. Sept. 8, 2023) (citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018)).

To "prove an interference claim, the plaintiff must show that the defendant's actions affected the exercise or enjoyment of any right granted or protected by the FHA, including by interfering with the plaintiff on account of [their] having aided or encouraged any other person in the exercise or enjoyment of such rights." *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 670 (9th Cir. 2025) (citation modified).

**A. Plaintiffs Do Not Allege They Engaged in a Protected Activity**

Plaintiffs allege that they engaged in a protected activity when they "reviewed, processed, investigated, conciliated, charged, managed, and/or resolved complainants' claims of housing discrimination under the Fair Housing Act." Compl. ¶ 130. They further allege that they were "responsible for participating in administrative proceedings at HUD under the Fair Housing Act to resolve charges of discrimination." *Id*. These legal responsibilities performed within the scope of their employment are not FHA protected activities.

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Favourite v. 55 Halley St.*, Inc., 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019). Courts have found individuals participated in a protected activity by aiding and encouraging others when they (1) signed a letter supporting a shelter whose residents accused an entity of FHA violations, *see Linkletter v. W. & S. Fin. Grp., Inc.,* 851 F.3d 632, 639 (6th Cir. 2017); (2) complained to their management that African-Americans, who had sought housing in a white area were mistreated, *see Hall v. Lowder Realty Co.*, 160 F. Supp. 2d 1299, 1322 (M.D. Ala. 2001); and (3) "refus[ed] to rent public housing in a racially discriminatory manner." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1305 (11th Cir. 1998). Plaintiffs fail to allege any activities in line with Section 3617's aiding and encouraging protection.

According to the Complaint, Plaintiffs were all attorneys within HUD's OGC. *See* Compl. ¶¶ 8-12. In those roles, they advised and supported the work of FHEO. *See id.* ¶ 30. FHEO is "the

investigatory body responsible for, among other things, enforcing the Fair Housing Act." Id. ¶ 26. But as the investigating entity, FHEO had no FHA rights to assert. It was FHEO's job to, among other things, (1) process and investigate "complaints of housing discrimination," (2) perform "compliance reviews," and (3) propose rules. *Id.* As attorneys within OGC, Plaintiffs had a "fiduciary duty to his or her client," not to the individuals filing FHA complaints. *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 741 F. Supp. 2d 222, 237 (D.D.C. 2010). Hence, their roles supporting the work of the agency did not qualify as a protected activity. They were not the personal attorneys of the individuals lodging FHA complaints and there is no allegation that they complained to their management that the agency was failing to respond to the complaints of housing violations that it received.

Because Plaintiffs have failed to plausibly plead that their performance of their jobs representing the agency by advising and supporting other HUD staff members constituted a protected activity within the meaning of Section 3617, their claim should be dismissed.

**B. Plaintiffs Failed to Plausibly Plead that They Suffered an Adverse Action**

Plaintiffs allege "the involuntary reassignments are an adverse action because they require Plaintiffs to transfer offices and do work that is meaningfully different from the civil rights-related work that they joined HUD to do." Compl. ¶ 133. They further contend "reassignments would dissuade a reasonable person from joining OFH or working on fair housing enforcement matters, for fear that they likewise will be targeted for involuntary reassignment or other adverse action." *Id.*

In the FHA context, courts look to determine whether a plaintiff "suffered an adverse action in the form of coercion, intimidation, threats, or interference." *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003) (citation modified). But "anti-interference provisions such as those

contained in the FHA . . . cannot be so broad as to prohibit any action whatsoever than in any way hinders a member of a protected class." *Id*.

Under FHA, the focus is not on the rights of Plaintiffs, who are attorneys within the agency, but on the rights of the individuals affected by the discriminatory behavior related to housing. Plaintiffs cannot claim the agency interfered with their rights to be attorneys in their chosen division, because they have no rights to their positions. For example, Plaintiffs do not allege they were hired by OGC, with a contractual restriction that they would only be assigned to OFH.

Further, the individuals they contend to have aided or encouraged in the pursuit of their right, continued to receive assistance from the attorneys remaining in OFH and the regional offices. *See* Compl. ¶¶ 29, 54.

Finally, Plaintiffs do not allege the reassignments affected the terms, conditions, or privileges of their employment. *See Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) ("not everything that happens at the workplace affects an employee's "terms, conditions, or privileges of employment").

Thus, Plaintiffs fail to provide material adverse actions to support their allegations.

**C. Plaintiffs Failed to Plausibly Plead Causation.**

Even if Plaintiffs were able to successfully allege that they participated in a protected activity and that their reassignment to other divisions were adverse actions (which it was not), Plaintiffs fail to sufficiently plead a causal link between the two.

A "clear majority of courts to have considered the question [of a Section 3617 causation standard] have concluded that retaliation claims under the FHA require a showing of but-for causation." *Kris v. Dusseault Fam. Revocable Tr.*, 594 F. Supp. 3d 333, 340 (D.N.H. 2022); *Campos v. HMK Mortg., LLC*, 458 F. Supp. 3d 517, 532 (N.D. Tex. 2020) ("[T]he Federal Housing Act retaliation statute requires but-for causation.").

Here, Plaintiffs allege the "real motivation behind the adverse action [reassignments] was: unlawful animus towards Fair Housing Act enforcement and the people who carry out that work." Compl. ¶ 6. Plaintiffs' bare allegations, however, fail to raise a plausible inference of causation.

First, Plaintiffs admit that before they were transferred, agency leadership requested voluntary transfers, demonstrating the agency was not targeting them specifically. *See id.* ¶ 50. Next, Plaintiffs admit that OFH attorneys were not the only attorneys affected by the reorganization, as attorneys from the Office of Program Enforcement were also asked to voluntarily transfer to other areas, where the agency determined there was a greater need. *See id.* Plaintiffs also admit that the agency had lost a considerable number of employees necessitating the need for staff realignment. *See id.* ¶ 41 (many probationary employees either resigned or were terminated); ¶ 61 ("OGC's regional offices have lost so many staff in recent months."). Finally, Plaintiffs admit that (1) OFH remained staffed, *see id.* ¶ 54, and (2) "FHA enforcement is included among regional counsel's various responsibilities," which meant that the work Plaintiffs contend is statutorily protected was still being done. *See id.* ¶ 29. While Plaintiffs attempt to wave away these facts (i.e OPE was only included to "deflect from decisionmakers' unlawful motivation under the FHA," *see id.* ¶ 77), Plaintiffs' conclusory belief statements are not enough to overcome their burden of plausibly pleading but-for causation. *See Kris*, 594 F. Supp. 3d at 340.

Because Plaintiffs have not plausibly alleged that their reassignments were on account of their legal work representing the agency by advising and supporting other FHA staff members, their claims should be dismissed.

* * *

## CONCLUSION

For these reasons, this action should be dismissed.

Dated: February 10, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Derrick A. Petit*
Derrick A. Petit, D.C. Bar No. 144466
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7269
Derrick.Petit@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PALMER HEENAN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et. al.,<br><br>Defendants. | Civil Action No. 25-3343 (RC) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, any opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that this action is DISMISSED.

SO ORDERED:

____________________
Date

________________________________
RUDOLPH CONTRERAS
United States District Judge