**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PALMER HEENAN,
PAUL OSADEBE, JULIA
DYKSTRA, ASHLEY VAZQUEZ,
and HANNAH GORDON,

*Plaintiffs*,

vs.

U.S. DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, *et al.*,

*Defendants*.

Case No.: 1:25-cv-03343

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING THE FAIR HOUSING ACT'S PRIVATE CAUSE OF ACTION**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1
ARGUMENT ........................................................................................................ 2
I. Sovereign immunity is waived for all relief requested. ........................................ 2
II. The FHA contains a private right of action against the United States and its agencies. ..... 4
A. The text of § 3613 creates an express right of action that includes the United States and its agencies. ........................................................................ 4
B. No implied limitation should be read into the text of § 3613. .............................. 10
III. Courts that have addressed the question support Plaintiffs' position. ........................ 13
CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andrus v. Glover Constr. Co.*,
446 U.S. 608 (1980) .......... 7

*Bank of Am. Corp. v. City of Miami, Fla.*,
581 U.S. 189 (2017) .......... 10

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) .......... 4

*Borum v. Brentwood Vill., LLC*,
218 F. Supp. 3d 1 (D.D.C. 2016) .......... 5

**Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020) .......... 1, 4, 12

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .......... 3

*Chamber of Commerce v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .......... 3

*City of Edmonds v. Oxford House, Inc.*,
514 U.S. 725 (1995) .......... 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .......... 8

**Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) .......... 3, 4, 11

*Food & Drug Admin. v. R. J. Reynolds Vapor Co.*,
606 U.S. 226 (2025) .......... 10

*Gladstone Realtors v. Vill. of Bellwood*,
441 U.S. 91 (1979) .......... 5

*Godwin v. Sec'y of Hous. & Urb. Dev.*,
356 F.3d 310 (D.C. Cir. 2004) .......... 6

*Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*,
508 F.3d 366 (6th Cir. 2007) .......... 7

*Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*,
144 F.4th 522 (4th Cir. 2025) .......... 12

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......... 9

*Hollis v. Chestnut Bend Homeowners Ass'n*,
760 F.3d 531 (6th Cir. 2014) .......... 12

*In re Vioxx Prods. Liab. Litig.*,
235 F.R.D. 334 (E.D. La. 2006) .......... 12

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
500 U.S. 72 (1991)........................................................................................ 8
**Jones v. Off. of Comptroller of Currency*,
983 F. Supp. 197 (D.D.C. 1997) *aff'd sub nom.*, 1998 WL 315581
(D.C. Cir. May 12, 1998) ........................................................................ 5, 6
*Latinos Unidos De Chelsea En Accion (Lucha) v. Sec'y of Hous. & Urb. Dev.*,
799 F.2d 774 (1st Cir. 1986) ........................................................................ 6
*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013)........................................................................................ 7
*Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*,
3 F.3d 1472 (11th Cir. 1993) ...................................................................... 10
*McCardell v. U.S. Dep't of Hous. & Urb. Dev.*,
38 F. Supp. 3d 843 (S.D. Tex. 2014), *aff'd*, 794 F.3d 510 (5th Cir. 2015) .............................. 13
*McKoy v. Spencer*,
271 F. Supp. 3d 25 (D.D.C. 2017) ................................................................ 3
*Nardone v. United States*,
302 U.S. 379 (1937).......................................................................................11
*Nat'l Ass'n of Deaf v. Trump*,
808 F. Supp. 3d 150, (D.D.C. 2025) ............................................................... 9
**Orozco v. Garland*,
60 F.4th 684 (D.C. Cir. 2023) ...........................................................3, 11, 14
*Peet v. Sidney*,
2019 WL 542939 (D. Minn. Jan. 24, 2019), *report and rec. adopted sub nom.*, 2019 WL
538330 (D. Minn. Feb. 11, 2019) ................................................................ 13
**Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*,
2022 WL 1604717 (D.D.C. May 21, 2022), *aff'd on other grounds*, 106 F.4th 1134
(D.C. Cir. 2024) ........................................................................................... 13
*Snyder v. Dravo Corp.*,
6 F.R.D. 546 (W.D. Pa. 1947) ...................................................................... 12
*Spann v. Colonial Vill., Inc.*,
899 F.2d 24 (D.C. Cir. 1990)......................................................................... 5
*Sturgeon v. Frost*,
587 U.S. 28 (2019)........................................................................................ 4
*Tanzin v. Tanvir*,
592 U.S. 43 (2020)........................................................................................ 4
*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015)...................................................................................... 12
*Trafficante v. Metropolitan Life Ins. Co.*,
409 U.S. 205 (1972)...................................................................................... 10

**Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) .......... 2, 3
*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) .......... 7
*U.S. ex rel. Zissler v. Regents of Univ. of Minnesota*,
154 F.3d 870 (8th Cir. 1998) .......... 12
*United States v. California*,
297 U.S. 175 (1936) .......... 11, 12
*United States v. Mitchell*,
463 U.S. 206 (1983) .......... 11
*United States v. Ramsey*,
165 F.3d 980 (D.C. Cir. 1999), *as amended* (Apr. 1, 1999) .......... 11
*Watson v. Bush*,
2010 WL 1582228 (N.D. Ill. Apr. 20, 2010) .......... 13
*Webb v. United States Veterans Initiative*,
993 F.3d 970 (D.C. Cir. 2021) .......... 5
*Z St., Inc. v. Koskinen*,
44 F. Supp. 3d 48 (D.D.C. 2014), *aff'd sub nom.*, 791 F.3d 24 (D.C. Cir. 2015) .......... 3

**Statutes**

5 U.S.C. § 702 .......... *passim*
15 U.S.C. § 1692a .......... 7
15 U.S.C. § 1692k .......... 7
29 U.S.C. § 2611 .......... 7
29 U.S.C. § 2617 .......... 7
*42 U.S.C. § 3602 .......... 1, 5, 6, 8
42 U.S.C. § 3603 .......... 8, 9
42 U.S.C. § 3604 .......... 5, 8, 9, 13
42 U.S.C. § 3605 .......... 5, 9
42 U.S.C. § 3606 .......... 5, 9
42 U.S.C. § 3607 .......... 1, 6, 7
42 U.S.C. § 3608 .......... 6
42 U.S.C. § 3610 .......... 6
*42 U.S.C. § 3613 .......... *passim*
42 U.S.C. § 3617 .......... *passim*

**Other Authorities**

134 Cong. Rec. 19711 (Aug. 1, 1988) (Statement of Sen. Kennedy) .......................................... 10

*Auth. of USDA to Award Monetary Relief for Discrimination*,
18 U.S. Op. Off. Legal Counsel 52 (1994) ..................................................................... 9, 13, 14

Corrected Brief for the United States as Amicus Curiae Supporting Plaintiffs-Appellees,
*Pickett v. City of Cleveland, Ohio*, No. 24-3395 (6th Cir. 2025), Dkt. No. 63 .......................... 8

## INTRODUCTION

Plaintiffs write in response to the Court's request for supplemental briefing on "whether the Fair Housing Act provides a private right of action against the United States or its agencies." It does for "discriminatory housing practices," including those alleged in this case.

Beginning with the text of the Fair Housing Act (FHA), it is well established that 42 U.S.C. § 3613 creates an express right of action for "aggrieved persons." "Aggrieved persons" is defined to include those who "claim[] to have been injured by a discriminatory housing practice." *Id.* § 3602(i)(1). And a "discriminatory housing practice" means "an act that is unlawful under section 3604, 3605, 3606, or 3617" of the FHA. *Id.* § 3602(f). Because Plaintiffs have alleged they were injured by a violation of § 3617, they "may commence a civil action." *Id.* § 3613(a)(1)(A). In contrast with the FHA's explicit exemptions, like those for religious organizations, the statute creates no exception for the United States or its agencies. *See id.* §§ 3607, 3613, 3617. Meanwhile, sovereign immunity is waived by the Administrative Procedure Act (APA), 5 U.S.C. § 702, which applies equally to APA and non-APA claims seeking only non-monetary relief.

Section 3613's creation of an *express*, broadly worded right of action is critical. Plaintiffs need not take on the unenviable task of establishing an implied right of action. Instead, Defendants face the equally unenviable task of establishing an implied carve out of the United States from the FHA's express right of action. But there is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020). Ordinary principles of statutory construction favor applying § 3613 as written. As such, courts and the Department of Justice's Office of Legal Counsel (OLC) have agreed that § 3613 applies against the United States.

Since its enactment almost sixty years ago, the FHA has protected both individuals experiencing affirmative discrimination and third parties seeking to vindicate the fair housing rights of those being discriminated against. Part of that protection comes from § 3613's broad and express grant of immediate judicial review for defined categories of discriminatory conduct. Where even the FHA's express exemptions are construed narrowly, it would make little sense for Congress to have intended there be additional, implied limitations. Rather, the FHA's plain text makes clear that the statute's anti-discrimination prohibitions—including the accompanying right of action—apply to private actors and the federal government alike.

**ARGUMENT**

**I. Sovereign immunity is waived for all relief requested.**

At the outset, Plaintiffs note that they do not rely on the FHA for a waiver of sovereign immunity, except as to attorneys' fees and costs. Because Plaintiffs seek only injunctive and declaratory relief—and not damages, *see* Compl., Dkt. No. 1, at 36—sovereign immunity is waived by 5 U.S.C. § 702 of the APA, *id.* ¶ 18. Congress also waived sovereign immunity for attorneys' fees and costs through 42 U.S.C. § 3613(c)(2).

For non-monetary relief, "Congress provided the necessary waiver of immunity in the second sentence of APA § 702." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006). Section 702's waiver reads:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]

5 U.S.C. § 702. This waiver does not apply if there are "other limitations on judicial review," or if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Plaintiffs' claims arise from the Department of Housing and Urban Development

(HUD) and its officers' actions in their official capacities, *see, e.g.*, Compl. ¶¶ 14, 44, 132, for which Plaintiffs seek only non-monetary relief, *id.* at 36. And nothing in § 3613 "expressly or impliedly forbids the relief which is sought," as that section expressly allows for injunctive relief alongside other remedies. *See* 42 U.S.C. § 3613(c)(1). Plaintiffs' claims thus fall squarely within this waiver's ambit.

Nor were Plaintiffs required to bring their claims directly under the APA to make use of § 702's waiver of sovereign immunity. The D.C. Circuit has "previously, and repeatedly, . . . expressly [held] that the 'APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'" *Trudeau*, 456 F.3d at 186 (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996)); *see also Orozco v. Garland*, 60 F.4th 684, 691–92 (D.C. Cir. 2023) (applying § 702 waiver to a Rehabilitation Act claim). So, "[t]he fact that Plaintiff[s'] claims are not themselves brought pursuant to the APA's cause of action" does not matter. *McKoy v. Spencer*, 271 F. Supp. 3d 25, 32 (D.D.C. 2017). And plaintiffs bringing non-APA claims do not need to satisfy "the statutory requirements that apply only to APA claims," such as final agency action, to rely on the waiver. *Z St., Inc. v. Koskinen*, 44 F. Supp. 3d 48, 64–65 (D.D.C. 2014), *aff'd sub nom.*, 791 F.3d 24 (D.C. Cir. 2015). This squares with Congress's intent for the APA's waiver: "to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency." *Bowen v. Massachusetts*, 487 U.S. 879, 899–900 (1988) (cleaned up).

As for Plaintiffs' request for attorneys' fees and costs, Compl. at 36, § 3613 expressly provides that "[t]he United States shall be liable for such fees and costs to the same extent as a private person." 42 U.S.C. § 3613(c)(2). Courts "need look no further" to award such relief. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 51 (2024).

## II. The FHA contains a private right of action against the United States and its agencies.

Having established a waiver of sovereign immunity, Plaintiffs turn to the crux of the Court's question. As evidenced by both the plain text of the provision and various canons of statutory interpretation, 42 U.S.C. § 3613 provides a private right of action against the United States and its agencies.

### A. The text of § 3613 creates an express right of action that includes the United States and its agencies.

The language of § 3613 contains terms that were carefully defined by Congress to be broad, necessarily encompassing the United States and its agencies. As with all questions of statutory interpretation, the Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "When Congress takes the trouble to define the terms it uses, a court must respect its definitions as 'virtually conclusive.'" *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) (quoting *Sturgeon v. Frost*, 587 U.S. 28, 56 (2019)); *see also Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020). There is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020). "Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Id.*

As relevant here, § 3613 provides:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). Courts have uniformly interpreted the language allowing "aggrieved persons" to "commence a civil action" as creating an express private right of action in federal

court. *See, e.g.*, *Webb v. United States Veterans Initiative*, 993 F.3d 970, 972 (D.C. Cir. 2021) (recognizing right to sue under § 3613); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 14 (D.D.C. 2016) (noting that "a plaintiff filing under § 3613 'may proceed directly into federal court'" (quoting *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 125 (1979)); *Jones v. Off. of Comptroller of Currency*, 983 F. Supp. 197, 202 (D.D.C. 1997) (contrasting those "expressly granted the right to sue under Sections 3602 and 3613" with those seeking an implied right of action), *aff'd sub nom.*, 1998 WL 315581 (D.C. Cir. May 12, 1998); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27–28 (D.C. Cir. 1990) (holding that predecessor cause of action "expressly provides a private right of action").

Unlike some rights of action that define the class of defendants who can be sued, § 3613 defines the class of plaintiffs who can sue. Specifically, the provision provides only an "aggrieved person" with a right of action. 42 U.S.C. § 3613(a)(1)(A). "Aggrieved person" is a defined term meaning "any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(i). "Person" is defined to include "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, receivers, and fiduciaries." *Id.* § 3602(d). And "discriminatory housing practice" is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." *Id.* § 3602(f); *see id.* § 3604 (the sale or rental of housing); *id.* § 3605 ("residential real estate-related transactions"); *id.* § 3606 ("the provision of brokerage services"); *id.* § 3617 (interference and retaliation provision); *see also* Pl.'s Opp'n to Defs.' Mot. to Dismiss (Opp'n), Dkt. No. 11, at 4 (discussing same). Because Plaintiffs are "individuals," thus qualifying as "persons," 42 U.S.C. § 3602(d), who allege

they have been injured by violations of § 3617, thus qualifying as "aggrieved persons," *id.* § 3602(i), Plaintiffs may use § 3613 to sue *any defendant* that has plausibly violated § 3617, including the United States.

This carefully constructed statutory language also distinguishes Plaintiffs' claim from those for which the FHA *does not* provide a private right of action. For example, some courts, including in this district, have determined that the FHA provides no private right of action to sue HUD for failing to meet its affirmative duties under § 3608, requiring instead that such claims be brought pursuant to the APA. *See Jones*, 983 F. Supp. at 202; *Latinos Unidos De Chelsea En Accion (Lucha) v. Sec'y of Hous. & Urb. Dev.*, 799 F.2d 774, 792–93 (1st Cir. 1986). And the D.C. Circuit similarly held that the FHA provides no cause of action to challenge HUD's decision not to issue a charge under § 3610. *Godwin v. Sec'y of Hous. & Urb. Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004). This distinction makes sense because unlike § 3617, §§ 3608 and 3610 are not "discriminatory housing practices" explicitly covered by §§ 3613 and 3602(f). *Jones*, 983 F. Supp. at 202–03. And this is fully consistent with "the multi-faceted enforcement scheme expressly set out in the statute," which provides for direct judicial review of discriminatory housing practice claims. *Lucha*, 799 F.2d at 792.

Combined, the language of § 3613 and the definitions provided in § 3602 make clear that the FHA's right of private action covers the United States, so that should be the end of the matter. But there are additional textual indications that Congress intended § 3613(a) to apply against the United States. *First*, the FHA specifically exempts some potential defendants from liability for otherwise prohibited acts, but not the United States. Section 3607 allows religious organizations and certain private clubs to restrict housing in ways other entities cannot. 42 U.S.C. § 3607(a). And the provision similarly carved out from liability some housing intended for older persons,

including *federal* programs operated to assist the elderly. *Id.* § 3607(b)(2)(A). The implication of these specific, tailored exemptions is that no other actors, and no other federal programs, are carved out of the FHA's procedural and substantive provisions. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–617 (1980)). Indeed, courts "cannot create categorical exemptions from [the FHA] without a statutory basis," and "[n]othing in the text of the FHA instructs [a court] to create" additional exemptions. *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 375 (6th Cir. 2007).

*Second*, given background principles of legislative drafting, the structure of § 3613 counsels against implied exceptions. Congress's "use of explicit language in other statutes cautions against inferring a limitation." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013). In other statutes, Congress has protected the United States from liability when it wished to do so by excluding the federal government from the defined terms used in the relevant cause of action. For example, in the Family and Medical Leave Act of 1993, passed just five years after the FHA's amendments to the private right of action, Congress allowed "eligible employees" to sue. 29 U.S.C. § 2617(a). But they defined "eligible employee" to exclude "any Federal officer or employee," *id.* § 2611(2)(B), thereby precluding actions against the federal government. Similarly, the Fair Debt Collection Practices Act, passed over a decade before the FHA revisions, allows plaintiffs to sue "any debt collector." 15 U.S.C. § 1692k(a) (1977). The statute, though, excludes "any officer or employee of the United States" from the definition of "debt collector." *Id.* § 1692a(6)(C). Congress could have defined "aggrieved person" or "discriminatory housing

practices" in a way that exempted the federal government from liability under the FHA, but it did not. *See* 42 U.S.C. § 3602.

Similarly, Congress's choice to focus on the conduct for which plaintiffs could sue, rather than the defendants that could be sued, constitutes a deliberate departure from preexisting, more restrictive, statutes. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 812 (2024) ("Congress knew how to depart from the traditional rule to create a limitations period that begins with the defendant's action instead of the plaintiff 's injury."). Prior to the FHA, it was common for causes of action to limit the defendants that could be sued to "persons," a term traditionally understood to exclude the United States and its agencies. *See, e.g.*, *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 82–83 (1991) ("As we have often noted, in common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." (cleaned up)). The FHA adopted this definition of "person" by omitting the United States and federal agencies. *See* 42 U.S.C. § 3602(d). But then, Congress chose *not* to limit § 3613(a) to defendants who are "persons." *Id.* § 3613(a). Congress's decision to "depart from the traditional rule" supports the broader application to the United States. *Corner Post*, 603 U.S. at 812; *cf.* Corrected Brief for the United States as Amicus Curiae Supporting Plaintiffs-Appellees, *Pickett v. City of Cleveland, Ohio*, No. 24-3395 (6th Cir. 2025), Dkt. No. 63, at 27 n.7 ("Section 3604(a)'s text, which is written in the passive voice . . . make[s] clear that any actor that makes housing unavailable may be held liable.").

*Third*, the "discriminatory housing practices" encompassed by § 3613's cause of action include prohibitions that specifically name the United States. Section 3603(a)(1)(A) provides that "the prohibitions against discrimination in the sale or rental of housing set forth in section 3604 of this title shall apply . . . to dwellings owned or operated by the Federal Government." That the

substantive provisions remedied by § 3613 cover conduct by the federal government indicates that the right of action also applies. *See Auth. of USDA to Award Monetary Relief for Discrimination*, 18 U.S. Op. Off. Legal Counsel 52, 57 (1994) ("OLC Mem.") ("It is possible to infer from the fact that § 3603 expressly subjects the United States to the discrimination provisions of § 3604 that Congress intended that the cause of action established by § 3613 would also apply to the United States.").[1]

*Fourth*, § 3613 makes the United States expressly liable for attorneys' fees and costs "to the same extent as a private person." 42 U.S.C. § 3613(c)(2). "The presence, in a provision authorizing the bringing of suits by private parties, of language indicating that the United States may be liable for attorneys' fees and costs certainly indicates a recognition that the United States may be subject to suits under the provision." OLC Mem. at 58; *see also Nat'l Ass'n of Deaf v. Trump*, 808 F. Supp. 3d 150, 159–60 (D.D.C. 2025) (finding the "expan[sion of] relief available for claims against the federal government," including creation of attorney's fees remedy, as indication of private right of action against the federal government).

And *fifth*, allowing for suits against the United States under § 3613 is consistent with decades of precedent mandating a liberal construction of the FHA. The Supreme Court has long recognized "the broad remedial intent of Congress embodied in the [FHA]." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). To this end, courts "accord[] a 'generous construction' to

[1] The other provisions captured by the term "discriminatory housing practices"—§§ 3605, 3606, and 3617—also apply against the federal government, even if they arise less often. Section 3605 applies against "any person or other entity whose business includes engaging in residential real estate-related transactions." 42 U.S.C. § 3605(a). The term "person" excludes the United States, *see supra* at 8, but Congress expanded § 3605 by also covering any "other entity" that "engag[es] in residential real estate-related transactions," *id.* § 3605(a). This latter clause captures the United States, as the statute expressly contemplates that the federal government engages in such activity. *Id.* § 3603(a)(1)(B)–(C). And §§ 3606 and 3617 specify the prohibited conduct, without limiting who could engage in that conduct.

the Act's complaint-filing provision[s]." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)). And the 1988 revisions to the private right of action sought generally to strengthen litigants' enforcement mechanisms against any "would-be violators." *See* Opp'n 3–4 (quoting 134 Cong. Rec. 19711 (Aug. 1, 1988) (Statement of Sen. Kennedy)). Accordingly, "[e]xemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination." *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472, 1475 (11th Cir. 1993). It would be anomalous to limit the scope of the private right of action based on an implied exception for the federal government, especially where even express exemptions are read narrowly.

**B. No implied limitation should be read into the text of § 3613.**

Because the text of § 3613 is unambiguous for the reasons discussed above, the Court need go no further. Plaintiffs nevertheless address potential counterarguments that Defendants may raise.

*First*, Defendants may argue that Plaintiffs' claims fall outside of the FHA's "zone of interests." "[A] plaintiff must belong to the class of persons to whom the statute grants a right to sue," *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 606 U.S. 226, 232 (2025)—a requirement once, but no longer, referred to as "prudential standing," *id.* at 232 n.3. But the zone-of-interests requirement asks only "whether the statute grants the plaintiff the cause of action that he asserts." *Id.* And that is determined by the text of the statute and traditional tools of statutory interpretation, which, as discussed above, counsel in favor of § 3613's application to the federal government. *Supra* section II.A. Moreover, the FHA's zone of interests has been interpreted to be exceptionally broad: "as broadly as is permitted by Article III of the Constitution." *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017) (citing cases). And Plaintiffs have adequately pleaded

Article III standing for the same reasons Plaintiffs have adequately pleaded adverse action and causation. *See* Opp'n 21–24.

*Second*, Defendants may point to the Supreme Court's "clear statement rule" for waivers of sovereign immunity, which allows for suits against the government only when a statute "unmistakably" allows it. *See Kirtz*, 601 U.S. at 48. That would be a category error. The canon is "no help" to Defendants because "Congress already waived the Government's immunity from actions seeking relief other than money damages in Section 702 of the Administrative Procedure Act." *Orozco v. Garland*, 60 F.4th 684, 691 (D.C. Cir. 2023) (cleaned up). As discussed above, § 702 has waived sovereign immunity for Plaintiffs' lawsuit. *Supra* section I. Because waivers of sovereign immunity and private rights of action are "analytically distinct," statutes creating rights of action "need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity." *United States v. Mitchell*, 463 U.S. 206, 218–19 (1983); *see also id.* at 219 ("The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.").

*Third*, although there is a related "canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it," *United States v. California*, 297 U.S. 175, 186 (1936), that canon does not apply here either. It is a "well recognized principle . . . that the sovereign is embraced by general words of a statute intended to prevent injury and wrong." *Nardone v. United States*, 302 U.S. 379, 384 (1937). This exception to the sovereign-exclusion canon applies "even if the statute infringes upon a recognized government prerogative." *United States v. Ramsey*, 165 F.3d 980, 987 n.11 (D.C. Cir. 1999), *as amended* (Apr. 1, 1999). In other words, "[i]f the statute is designed for the public good, to advance justice, or to prevent

injury, there is a presumption that the statute applies to the sovereign." *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 340 (E.D. La. 2006); *see also Snyder v. Dravo Corp.*, 6 F.R.D. 546, 552 (W.D. Pa. 1947) ("[W]here a statute is for the public good or to prevent injury and wrong, the sovereign or government is bound by it although not particularly named therein."). That is surely true of the FHA, which seeks to remedy the denial of housing opportunities based on race, color, religion, national origin, sex, disability, or familial status, *see Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 530 (2015), and prohibits interference against those seeking to vindicate these rights on their own or another's behalf, *see Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, 144 F.4th 522, 536 (4th Cir. 2025). Moreover, the canon should be "invoked only when the statute's purpose is in doubt," which the FHA's is not. *U.S. ex rel. Zissler v. Regents of Univ. of Minnesota*, 154 F.3d 870, 874 (8th Cir. 1998); *see also California*, 297 U.S. at 186–87.

And *fourth*, Defendants may argue that Congress would not have expected the FHA to be applied against HUD in the way alleged by Plaintiffs. As an initial matter, Plaintiffs allege textbook interference under § 3617: that they were punished "[b]ecause Plaintiffs assisted complainants and others in asserting and vindicating their rights under the FHA." Compl. ¶ 6; *see* Opp'n 17–20. But in any case, it matters little what Congress expected at the time of passage. "The fact that a statute has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock*, 590 U.S. at 674 (cleaned up). And "in the context of an unambiguous statutory text, whether a specific application was anticipated by Congress is irrelevant." *Id.* at 677 (cleaned up). Like Title VII—the statute interpreted in *Bostock*—the FHA's breadth is an unambiguous feature that applies regardless of what Congress may have anticipated at its passage. *See Hollis v. Chestnut*

*Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014) (noting reasons that Title VII and FHA are interpreted consistently).

**III. Courts that have addressed the question support Plaintiffs' position.**

Not many courts have directly addressed whether § 3613 provides a cause of action against the United States or its agencies for non-monetary relief. But several courts have held, assumed, or strongly suggested that the United States is subject to § 3613. A court in this district, for example, determined that plaintiffs could bring a § 3604 claim—a discriminatory housing practice covered by § 3613—against HUD "because Plaintiffs' claim is covered by the general waiver of sovereign immunity contained in the Administrative Procedure Act" and "Plaintiffs seek only injunctive relief." *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*, 2022 WL 1604717, at *14 (D.D.C. May 21, 2022), *aff'd on other grounds*, 106 F.4th 1134 (D.C. Cir. 2024). Courts elsewhere have held similarly. *See McCardell v. U.S. Dep't of Hous. & Urb. Dev.*, 38 F. Supp. 3d 843, 845 (S.D. Tex. 2014) (evaluating merits of discriminatory housing practice claim, but dismissing due to separate safe harbor clause), *aff'd*, 794 F.3d 510 (5th Cir. 2015); *Peet v. Sidney,* 2019 WL 542939, at *3 (D. Minn. Jan. 24, 2019) (recommending that court had jurisdiction to hear FHA claims for injunctive relief but that claims were untimely), *report and rec. adopted sub nom.*, 2019 WL 538330 (D. Minn. Feb. 11, 2019); *Watson v. Bush*, 2010 WL 1582228, at *8 (N.D. Ill. Apr. 20, 2010) (holding that FHA claims could be brought against HUD but that plaintiff had not pleaded sufficient facts regarding HUD's involvement).

Notably, OLC reached the same conclusion. In determining that § 3613 did not waive sovereign immunity for damages, OLC's analysis appeared to proceed based on its understanding that the United States was nonetheless subject to suit under § 3613: "Just because the United States is subject to the cause of action does not necessarily mean it is subject to the full range of remedies that are set forth in the statute." OLC Mem. at 58 (discussing the "actual and punitive damages"

contemplated in § 3613(c)(1)). In so doing, OLC recognized that there were two "plausible" readings of § 3613, either of which would provide for suits like Plaintiffs'. In the first reading, the provision does, in fact, waive sovereign immunity for damages. *Id*. Although Plaintiffs would prevail under this theory, Plaintiffs do not press the issue here. In the second, which OLC adopted, the statute "contemplates an action that is limited to seeking relief other than money damages." *Id.* at 59. According to OLC, "[t]his reading is based on the fact that the sovereign immunity of the United States against non-monetary relief already has been waived by" § 702 of the APA. *Id.* As such, this interpretation reflects OLC's attempt to harmonize the statutory text and the standard for waivers of sovereign immunity. *Id.* This second reading is Plaintiffs' theory here.

The D.C. Circuit recently addressed many of the same issues in a Rehabilitation Act case, including whether an express cause of action reached suits against the federal government. *See Orozco v. Garland*, 60 F.4th 684, 685 (D.C. Cir. 2023). In *Orozco*, the court considered the government's argument that the relevant cause of action should be read to incorporate a limitation found in a different part of the statute that would have restricted plaintiffs' ability to sue the federal government when acting as employer. 60 F.4th at 688. The court rejected that argument, explaining that "[i]f Congress had meant also to incorporate [the other provision's] limits on who may sue, Congress would have said so." *Id.* at 689. Because "[i]t did not," the right of action's "own definition of qualifying plaintiffs . . . controls, permitting [the plaintiff] to file suit" against the federal agency. *Id.* Section 3613's definition of qualifying plaintiffs—aggrieved persons raising discriminatory housing practice claims, including under § 3617—should similarly control here. *See* 42 U.S.C. § 3613(a); *id.* § 3602(f). The *Orozco* court further analyzed the structure of the statute before holding that, even if the text was ambiguous as to a waiver of sovereign immunity, Section 702 supplied the necessary waiver. *Orozco*, 60 F.4th at 690–91. The same is

true here, as Plaintiffs clearly fall within the FHA's purview of those allowed to sue the federal government, and sovereign immunity is waived by § 702 of the APA.

**CONCLUSION**

For the foregoing reasons, Plaintiffs have identified a private right of action against HUD, and the Court should deny Defendants' motion to dismiss for the reasons set forth in Plaintiffs' opposition brief (Dkt. No. 11).

Dated: September 11, 2026

Respectfully submitted,

*/s/ Clayton L. Bailey*________________
Clayton L. Bailey (DC Bar No. 1644867)
Margaret (Emmy) Wydman (DC Bar No. 90007646)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7836
cbailey@civilservicellp.com
ewydman@civilservicellp.com

*Counsel for Plaintiffs*