**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PALMER HEENAN, PAUL OSADEBE, JULIA DYKSTRA, ASHLEY VAZQUEZ, and IRIS MAUTE-GIBSON,[1]

*Plaintiffs*,

vs.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

SCOTT TURNER, in his official capacity as Secretary of Housing and Urban Development,

*Defendants*.

Case No.: 1:25-cv-03343-RC

**PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs respectfully request leave to file an amended complaint following this Court's September 28 opinion granting Defendants' motion to dismiss. *See* Dkt. No. 17. Plaintiffs seek to add allegations reflecting newly discovered facts that both support their originally pleaded claims and address what the Court deemed as deficiencies in their original complaint. Because the proposed amendments are not futile and would not result in undue delay or prejudice to Defendants, the Court should grant Plaintiffs leave to amend their complaint. Defendants oppose this motion. A copy of the proposed amended complaint is attached as Exhibit A.

[1] Pursuant to Local Civil Rule 5.1(c)(1), Plaintiff Iris Maute-Gibson's address is being filed under seal with the Court in a separate Notice.

## BACKGROUND

Plaintiffs are former attorneys in the Office of Fair Housing (OFH) within the Department of Housing and Urban Development's (HUD) Office of General Counsel (OGC). Plaintiffs allege that in 2025, they were involuntarily transferred out of the office that did work advancing the Fair Housing Act (FHA). Plaintiffs allege that these transfers were based on the prior work they did as fair housing attorneys, and that therefore the forced transfers were unlawful under the interference provision of the FHA. *See* 42 U.S.C. § 3617. They filed this lawsuit, seeking to be reinstated to their prior office. *See* Dkt. No. 1.

Defendants moved to dismiss Plaintiffs' original complaint on both jurisdictional and Rule 12(b)(6) grounds. *See* Dkt. 10. After that motion was fully briefed, *see* Dkt. Nos. 11 ("MTD Opp."), 13, the Court called for, and the parties submitted, supplemental briefing on whether the FHA provides a cause of action against the federal government, *see* Dkt. Nos. 14, 15. The Court then rejected Defendants' Rule 12(b)(1) arguments, concluding that neither sovereign immunity nor the CSRA precluded Plaintiffs' claims. *See* Dkt. No. 17 ("Op.") at 10–24. But the Court also held that Plaintiffs failed to state a claim because "Plaintiffs have not plausibly alleged that retaliatory motive played a part in causing their reassignments." *Id.* at 26. Plaintiffs have received additional evidence since they filed their first complaint that would cure the infirmities that led to the prior dismissal. Specifically, Plaintiffs seek to add allegations indicating that regardless of the any purported staffing needs or priority shift from the new administration, Plaintiffs were targeted for removal from OFH because of their specific past fair housing work. Public statements and sworn testimony make clear that there was plenty of work for OFH to do, Defendants just did not want the "sly bureaucrats" who had worked on fair housing work during prior administrations to do it. *See infra* at 6. Accordingly, Plaintiffs now seek leave to amend their complaint to add these

newly discovered facts and to substitute one plaintiff based on a change of circumstances since the filing of the original complaint.[2]

**LEGAL STANDARDS**

After the time has expired to amend a complaint as a matter of right, a plaintiff may amend a complaint by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), the Court "should freely give leave" to a party to amend its pleading "when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (citing *Foman*, 371 U.S. at 182); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Moreover, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. "Amendments that do not radically alter the

[2] As this Court's opinion did not state whether the dismissal was with or without prejudice, Plaintiffs are proceeding under this district's "general rule . . . that when a Court dismisses a count for failing to state a claim under Federal Rule 12(b)(6), it does so without prejudice to refile and with leave to amend the complaint." *Jefferies v. D.C.*, 917 F. Supp. 2d 10, 23 (D.D.C. 2013). Specifically, because the Court's dismissal order is silent as to its view on whether the identified deficiencies are curable, Plaintiffs assume the dismissal is without prejudice. *See Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) ("Dismissal with prejudice is the exception, not the rule, in federal practice because it 'operates as a rejection of the plaintiff's claims on the merits and ultimately precludes further litigation of them.'" (citation omitted)); *Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) ("A dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" (citation omitted)); *see also* May 14, 2026 Minute Order, *Blakney v. Medical Trans. Mgmt., Inc.*, Case No. 1:25-cv-04339 (D.D.C.) (citing *Rudder* to explain that a dismissal is without prejudice where the dismissal order itself was silent on the matter).

scope and nature of the action . . . are especially favored." *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019) (Contreras, J.) (quoting *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013)). "Because leave to amend should be liberally granted," the burden is on the defendant to show that leave to file an amended complaint should be denied. *Sodexo Operations, LLC v. Not-for-Profit Hosp. Corp.*, 210 F. Supp. 3d 138, 143 (D.D.C. 2016).

**ARGUMENT**

The Court should grant Plaintiffs leave to amend their complaint. As the proposed amended complaint would survive a motion to dismiss, amendment is not futile. There is no undue delay, bad faith, or dilatory motive in seeking this amendment, and Defendants will not be prejudiced.

**I. The proposed amendments are not futile.**

The Court should permit Plaintiffs to amend their complaint because it would not be futile. Amendment is futile when the proposed complaint would not survive a motion to dismiss. *Sodexo*, 210 F. Supp. 3d at 143. So, "review for futility 'is, for practical purposes, identical to review of a Rule 12(b)(6)' motion to dismiss." *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010)). Thus, "[i]n assessing a motion for leave to amend, the Court is required to assume the truth of the allegations in the proposed amended complaint and construe them in the light most favorable to the movant." *Connecticut*, 363 F. Supp. 3d at 57 (quoting *Flaherty v. Pritzker*, 322 F.R.D. 44, 46 (D.D.C. 2017)); *see Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C. Cir. 1998).

The Court's first motion-to-dismiss opinion clarified the legal playing field for this case. The Court held that Plaintiffs had a cause of action under the FHA and that the CSRA did not categorically bar FHA claims by federal employees. Op. 10, 24. But the Court also held that Plaintiffs needed to provide more factual support for the inference that "their reassignments were motivated, at least in part, by a desire to retaliate against Plaintiffs for engaging in protected activity, rather than simply reflecting agency decisions concerning the reallocation or reorganization of its FHA enforcement work." Op. 27. Plaintiffs allege that there is indeed more factual support. Plaintiffs' new allegations demonstrate that HUD was doing far more than simply reshuffling priorities. Instead, HUD sought to punish Plaintiffs for the fair housing work they had done in the past. Plaintiffs amended allegations would thus establish retaliatory causation.[3]

**A. The pleading standard for causation in retaliation claims is lenient.**

As an initial matter, Plaintiffs acknowledge that it can be difficult to prove a defendant's true motive in a civil rights case. But Plaintiffs do not have to do so at the pleading stage. *See Cooper v. W. & S. Fin. Grp., Inc.*, 847 F. Supp. 2d 1031, 1040 (S.D. Ohio 2012) ("[A] determination as to defendant's true motives cannot be made at the pleading stage."). So long as the face of the complaint states a claim, "Plaintiffs will have the opportunity to prove [their] allegation[s] at the summary judgment stage." *Connecticut*, 363 F. Supp. 3d at 63; *see Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 49 (D.D.C. 2009) ("Whether the disputed facts will or will not show that the individual employees fit that definition is not to be resolved at this stage."). Indeed, the D.C. Circuit has consistently described the burden when pleading the causation element of a prima facie retaliation case as "minimal." *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012);

[3] Plaintiffs have adequately alleged the other elements of an FHA claim—protected activity and adverse action—for the reasons explained in their prior briefing. *See* MTD Opp. 17–22; *see also* Op. 26, 26 n.6 (assuming protected activity and holding that adverse action was satisfied).

*Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).

Nothing about the D.C. Circuit's opinion in *Hubbard v. U.S. E.P.A., Administrator*, 809 F.2d 1 (D.C. Cir. 1986), changes that. Although *Hubbard* indeed imposed a heightened causation standard, *id.* at 5, it did not impose a heightened *pleading* standard. After all, *Hubbard* was decided on summary judgment, after the parties had the opportunity to build a factual record. *See id.* at 6 ("Hubbard simply did not provide enough factual material on this issue to escape a summary dismissal of his Privacy Act damage claim."). The Court's exercise of jurisdiction over Plaintiffs' claims at the motion-to-dismiss stage affords both parties an opportunity to prevail on a more fully formed record. *See Jackson v. Kennedy*, 2026 WL 172440, at *10 (D.D.C. Jan. 22, 2026) (citing cases).

**B. Plaintiffs have adequately pleaded causation.**

Proceeding under the motivating factor causation standard, *see* Op. 25–26, Plaintiffs plausibly allege that their fair housing advocacy was *at least* a motivating factor in Defendants' targeted restructuring efforts.

First, Assistant Secretary Craig Trainor, who oversees the Fair Housing and Equal Opportunity (FHEO) office within HUD, recently said the quiet part out loud regarding agency leadership's disdain for Plaintiffs' work. He publicly criticized the fair housing work done under prior administrations, alleging that such work was being done by "sly bureaucrats."[4] In his view, HUD's fair housing offices had been "pursu[ing] dubious ideological crusades" and "self–indulgent cases."[5] According to him, OFH and FHEO had, until this Administration, been acting more like a "social justice NGO" than "a law enforcement agency," but "under the leadership of

[4] Am. Compl., Ex. A, ¶ 84 (citations omitted).
[5] *Id.*

President Trump and Secretary Turner, that dark era is over."[6] But disagreement with prior fair housing work is not a valid basis for punishing the civil servants who did that fair housing work. Instead, the FHA ensures that people like Plaintiffs can do their work without fear of reprisal. The timing of Assistant Secretary Trainor's statements—after the mass transfer of the folks enforcing the FHA—supports the allegation that this is the retaliatory motive that caused Plaintiffs' transfers.

Second, other statements have backed up the notion that HUD was targeting the people for the work they had done, rather than merely reallocating resources. One OGC official involved in the transfer decisions acknowledged that, in fact, there was a lot of fair housing work to do; the agency just did not want *these* employees to do it. According to her, "Fair Housing actually got a significant amount of focus initially," but it was "*probably not the kind that some of them wanted*."[7] As to the impending changes to OFH's work, that official surmised that this "*was not what some of them would have wanted to happen*."[8] This assumption about Plaintiffs was plainly made based on Plaintiffs' previous fair housing work, and such unabashed animus across agency leadership reasonably informed the reassignment decisions. *See Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528–29 (6th Cir. 2013) (affirming denial of summary judgment for defendants where "some of the discussions among city officials centered on the [protected characteristic]").

Third, the amended complaint demonstrates that other justifications put forward by Defendants were pretextual. OGC did not simply seek to fill a need elsewhere with the transfers in question. OGC officials, rather, made clear that it was not really about the offices they would be transferred to, but that they needed to move Plaintiffs *out of OFH*.[9] At least one non-OFH

---

[6] *Id.*
[7] *Id.* ¶ 83.
[8] *Id.*
[9] *Id.* ¶¶ 56, 68.

attorney volunteered to transfer to one of the identified offices, yet OGC officials did not move him, instead reassigning multiple OFH attorneys, including Plaintiffs, to that office. And, despite OGC officials' insistence that Plaintiffs' reassignments were necessary to address significant and time sensitive staffing shortages in certain offices, Plaintiffs also have often found themselves with little to no work to do in their reassigned positions, beginning shortly after their reassignment and continuing to date.[10] Further, OGC officials knew that reassigning Plaintiffs out of OFH ultimately would likely exacerbate, rather than solve, any alleged staffing gaps. Indeed, one of the goals of the transfers appeared to be simply to make Plaintiffs quit. OGC officials acknowledged their belief that OFH attorneys would likely quit their jobs at HUD if reassigned to other divisions.[11] And OFH's Associate General Counsel reiterated this understanding directly to OGC officials.[12] This view was correct: many reassigned OFH attorneys, including some Plaintiffs, are no longer at HUD.[13] Together, these allegations demonstrate that the transfers were not primarily driven by new priorities or allocation of resources, but were rather about targeting and punishing disfavored attorneys based on their prior work.

Accordingly, Plaintiffs need not rely merely on a temporal relationship between the protected activity and the adverse action, *see* Op. 26; they have pleaded actual statements by agency officials and facts suggesting pretext. *See Harris*, 791 F.3d at 70 (causation plausible where plaintiffs had "supplemented" with "facts that rebut" legitimate reasons for adverse action); *Melkumyan v. Power*, 2024 WL 1299366, at *9 (D.D.C. Mar. 26, 2024) (plaintiffs' allegations supported based on statements of those with personal knowledge); *see also Gordon v. U.S. Capitol*

---

[10] *Id.* ¶ 73.
[11] *Id.* ¶¶ 57, 71.
[12] *Id.* ¶ 57.
[13] *Id.* ¶¶ 73, 94, 102, 108.

*Police*, 778 F.3d 158, 162 (D.C. Cir. 2015) ("[R]etaliation, too, can be proven by direct evidence."). Statements similar in kind and quantity have been sufficient for plaintiffs at even more advanced stages of litigation. *See Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1145 (9th Cir. 2024) (holding that two statements were sufficient evidence for § 3617 jury verdict against defendant); *Hidden Village*, 734 F.3d at 528–29. A "mosaic" of evidence like Plaintiffs' has, in fact, precluded summary judgment in a defendant's favor. *See Ismael v. Roundtree*, 161 F.4th 752, 760–61 (11th Cir. 2025). At the very least, these new allegations "nudge[] [their] claims across the line from conceivable to plausible." Op. 28 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. There has been no undue delay in amending the complaint, and Defendants will not be prejudiced.

"Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice." *Connecticut*, 363 F. Supp. 3d at 55 (cleaned up). Regardless, "[i]n most cases delay alone is not a sufficient reason for denying leave. . . . If no prejudice to the non-moving party is found, the amendment will be allowed." *Caribbean*, 148 F.3d at 1084 (cleaned up). Amendment will neither unduly delay nor prejudice Defendants.

First, there is no untimely delay. Plaintiffs seek to amend their complaint roughly a month after this Court's dismissal of their original complaint, *see* Op., and just over a year after the filing of their original complaint, *see* Dkt. 1. This is well within what this district, and this Court, has endorsed as a timely amendment. *See Connecticut*, 363 F. Supp. 3d at 55 (considering post-dismissal amendments); *see also Hill v. U.S. Dep't of Def.*, 70 F. Supp. 3d 17, 20 n.3 (D.D.C. 2014) (finding no undue delay where dispositive motion ruling came "approximately five months prior to [plaintiff]'s motion to amend"). Indeed, "a grant of leave to amend is particularly appropriate

following dismissal of a complaint for failure to state a claim." *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (citation omitted).

Second, there is no prejudice to Defendants. Amendment is certainly not "so late in the litigation that [Defendants] will be required to engage in significant new preparation." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006). There has been no discovery; only briefing related to Defendants' motion to dismiss. *See id.* Accordingly, "[t]his case is in its infancy," which counsels against a finding of prejudice. *Connecticut*, 363 F. Supp. 3d at 55. Further, because all of Plaintiffs' and the proposed additional plaintiff's allegations "arise from the same core set of events underlying the initial complaint," *Connecticut*, 363 F. Supp. 3d at 55—namely, HUD's involuntary reassignment of Plaintiffs—the proposed amended complaint "would not unduly increase discovery" nor "significantly complicate or lengthen the trial," *Djourabchi*, 240 F.R.D. at 13 (cleaned up).

Specifically, Plaintiffs seek leave to supplement their original complaint with related allegations to cure the deficiencies identified in this Court's dismissal order and clarify Plaintiffs' legal theory. Facts uncovered after Plaintiffs filed their original complaint demonstrate that while agency priorities may have shifted because of the new administration, Plaintiffs were targeted not only because of office restructuring, but because of past work they had done advancing the Fair Housing Act. Plaintiffs are not asking to add new claims; Plaintiffs instead seek "to bolster [their] same claims with additional facts." *Sodexo*, 210 F. Supp. 3d at 149. As such, both the original and new allegations pertain to the same events. *See Connecticut*, 363 F. Supp. 3d at 55 (considering whether the amendments "arise from the same core set of events underlying the initial complaint"). Plaintiffs also seek to substitute one plaintiff (Iris Maute-Gibson) for another (Hannah Gordon) based on a change in factual circumstances since the filing of the original complaint. The proposed

additional plaintiff is very similarly situated to an existing plaintiff, so this has no bearing on the scope of the action. *See Daniel v. Fulwood,* 310 F.R.D. 5, 8 (D.D.C. 2015). As a result, Plaintiffs' claims maintain their "initial character," and they continue to turn on the same statutory framework as in the original complaint—the Fair Housing Act. *Brown v. F.B.I.*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (considering request to add claims arising under statutes not initially raised). Plaintiffs' proposed amendments, therefore, do not "radically alter the scope and nature of the action," which counsels in favor of leave to amend post-dismissal allegations. *Connecticut*, 363 F. Supp. 3d at 54 (citation omitted).

Moreover, Defendants will not be disadvantaged by these amendments, as they will have a full and fair opportunity to respond to Plaintiffs' proposed amendments. *Dooley v. United Techs. Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993). "[I]t is true that defendants will have to bear the burden of answering an amended complaint and perhaps filing another dispositive motion." *Ghawanmeh v. Islamic Saudi Acad.*, 268 F.R.D. 108, 111 (D.D.C. 2010). But the "inconvenience and additional cost of litigation do not ordinarily add up to prejudice"; "[o]therwise, every substantive amendment under Rule 15 would yield prejudice and thus undue delay." *Black Lives Matter D.C. v. Trump*, 720 F. Supp. 3d 1, 12 (D.D.C. 2024) (cleaned up). As Plaintiffs' request to amend is neither untimely nor a substantial change in the scope of litigation, there will be no prejudice to Defendants. *See Djourabchi*, 240 F.R.D. at 13.

* * *

As "none of the legitimate reasons [such as futility, bad faith, or prejudice] that may justify denial of leave to amend" are present, Plaintiffs' first request for leave to amend their complaint should be granted. *Firestone v. Firestone*, 76 F.3d at 1209.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant them leave to file the attached proposed amended complaint.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Clayton L. Bailey*

Clayton L. Bailey (DC Bar No. 1644867)
Margaret (Emmy) Wydman (DC Bar No. 90007646)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7840
cbailey@civilservicellp.com