**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PALMER HEENAN, PAUL OSADEBE, JULIA DYKSTRA, ASHLEY VAZQUEZ, and IRIS MAUTE-GIBSON,

*Plaintiffs*,

vs.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,

*Defendants*.

Case No.: 1:25-cv-03343-RC

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF RULE 60(b) MOTION**

The Court's motion-to-dismiss opinion and order dismissed Plaintiffs' first complaint in this case. Although Defendants specifically requested that the Court dismiss this *action*, the Court revised Defendants' proposed order and instead dismissed Plaintiffs' *complaint*. That was the ordinary course. Although Plaintiffs prevailed on their legal arguments, the crux of the Court's opinion was that Plaintiffs had failed to allege sufficient factual material to support their FHA claim. Nothing in the opinion—and nothing in Defendants' opposition to this motion—suggested that those factual deficiencies could not possibly be cured. Defendants nevertheless insist that the Court's order was a final judgment with prejudice. The text of the Court's order and the circumstances suggest otherwise. Plaintiffs thus properly sought leave to amend based on a reasonable interpretation of this Court's order as dismissing the complaint without prejudice.

When Defendants finally reached futility, their analysis gave short shrift to the inconvenient facts at the core of Plaintiffs' proposed amendment. The new evidence drawn from testimony of HUD officials demonstrates that Plaintiffs' transfers were not simply a matter of shifting priorities and agency administration, but that Plaintiffs were targeted for the fair housing work they had done in the past. That is a violation of the Fair Housing Act.

**I. Rule 15(a)(2) governs because the Court's order did not end the action.**

Defendants assert that the Court's September 28, 2026 Order, which granted Defendants' motion to dismiss, was a "final judgment." Dkt. No. 20 ("Opp'n") at 2. But Plaintiffs are not required to satisfy the more stringent Rule 59(e) standard, rather than the more permissive Rule 15(a)(2) standard, because the Court's order was not, in fact, a "final, appealable judgment." *Wilcox v. Georgetown Univ.*, 987 F.3d 143, 152 (D.C. Cir. 2021).

To determine whether a court's order is a final judgment, the D.C. Circuit distinguishes "between dismissing a 'complaint' and dismissing a 'case' or all the 'claims.'" *Id.* at 151; *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 666 (D.C. Cir. 2004). "Dismissal of a complaint without prejudice is not a final appealable order." *Wilcox*, 987 F.3d at 146. "By contrast, dismissal of an 'action' or 'case' is presumptively final, whether with or without prejudice." *Id.* at 147. The question ultimately "turns on whether the district court intended the judgment to represent the final decision in the case." *PhantomALERT Inc. v. Apple Inc.*, 183 F.4th 790, 799 (D.C. Cir. 2026) (quoting *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020)).

The Court's order—which Defendants studiously avoid citing in their opposition—states plainly enough that "the *Complaint* is dismissed." Dkt. No. 16 (emphasis added). "[A]n order stating the complaint is dismissed in full is generally not, without more, a final decision." *Wilcox*, 987 F.3d at 149. That conclusion is further supported by the Court's decision not to adopt Defendants' proposed order, which included a statement that "this *action* is DISMISSED." Dkt. No. 10-1 (emphasis added); *see Wilcox*, 987 F.3d at 149 ("Notably as well, the district court did not adopt the text of the University's proposed order to dismiss the complaint with prejudice.").

The Court's opinion and order also lack many of the other "indicia of . . . finality" identified by the D.C. Circuit. *Wilcox*, 987 F.3d at 149. Neither indicated that "amendment of the complaint would be futile." *Id.* Neither indicated that the order "was final and appealable." *Id.*

Neither "state[d] that 'the case' or 'the action' was dismissed." *Id.* And the dismissal was "not wholly for lack of subject-matter jurisdiction." *Id.* Defendants appeal to the fact that the case was administratively closed on the docket. Opp'n 2. But that "adds little." *Wilcox*, 987 F.3d at 149. Such a designation may reflect an administrative function rather than a judicial determination. *Id.* at 149–50. Indeed, even an order affirmatively directing the Clerk to close the case does not "render [an] Order final and appealable." *Id.* at 150; *see also Murray v. Gilmore*, 406 F.3d 708, 712 (D.C. Cir. 2005) (no final decision even where the district court ordered the case "taken off the active calendar of the Court").

In short, neither the text of the order nor the surrounding circumstances of the case indicate that the Court intended its order to be a final judgment. And in this circuit, that means that Rule 15(a)(2) applies. The Court therefore need not reach the question of whether true silence on the nature of the dismissal would default to a dismissal with prejudice or without—a question that has led to intra-district disagreement[1]—because the Court's order "states otherwise." *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 612 n.11 (D.C. Cir. 2020).

## II. In the alternative, the Court should grant relief under Rule 60(b).

The Court, of course, knows best whether the motion-to-dismiss order was intended to be a final judgment. To the extent Plaintiffs read the Court's order incorrectly, Plaintiffs respectfully request relief under Rule 60(b). Plaintiffs have contemporaneously filed a motion together with this reply seeking that relief.

[1] *Compare Brady v. Liquidity Servs., Inc.*, 2019 WL 8194955, at *1 (D.D.C. Feb. 4, 2019) ("Under Federal Rule of Civil Procedure 41(b), a dismissal for failure to state a claim 'operates as an adjudication on the merits.' By default, such a dismissal is with prejudice."), *with* May 14, 2026 Minute Order, *Blakney v. Medical Trans. Mgmt., Inc.*, Case No. 1:25-cv-04339 (D.D.C.) (citing *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012), to explain that a dismissal is without prejudice where the dismissal order itself was silent on the matter).

Rule 60(b) allows the Court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on account of, among other reasons, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Supreme Court has clarified that "mistake" includes "a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 534 (2022). And dismissing a plaintiff's case with prejudice can be error when leave to amend should have been granted. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 2019 WL 11307644, at *2 (D.D.C. July 22, 2019) (Contreras, J.); *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006) (vacating dismissal with prejudice absent specific findings of non-curability).

"Dismissal with prejudice is the exception, not the rule, in federal practice because it operates as a rejection of the plaintiff's claims on the merits and ultimately precludes further litigation of them." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (cleaned up). And "[t]he standard for dismissing a complaint with prejudice is high: 'dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Belizan*, 434 F.3d at 583 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (cleaned up)). Accordingly, the "general rule is that when a Court dismisses a count for failing to state a claim under Federal Rule 12(b)(6), it does so without prejudice to refile and with leave to amend the complaint." *Jefferies v. D.C.*, 917 F. Supp. 2d 10, 23 (D.D.C. 2013).

The Court held in the motion-to-dismiss opinion that Plaintiffs did not allege facts "supporting an inference that their reassignments were motivated, at least in part, by a desire to retaliate against Plaintiffs for engaging in protected activity, rather than simply reflecting agency decisions concerning the reallocation or reorganization of its FHA enforcement work." Dkt. No. 17 ("Op.") at 27. For the dismissal to operate with prejudice, then, the Court needed to determine

whether there was any set of facts consistent with the original complaint that could possibly have cured that deficiency. *Belizan*, 434 F.3d at 583. It was possible to cure the deficiency, as evidenced by Plaintiffs' proposed amended complaint, which is not futile for the reasons described in Plaintiffs' original motion and below. *Supra* III.B; Pls.' Mot., Dkt. No. 18, at 4–9.

A Rule 60(b) motion is also timely. Unlike a Rule 59(e) motion, which has a strict 28-day deadline, a Rule 60(b) motion "must be made within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). On the lower bound, some courts have found that a Rule 60(b) motion must be brought before the 60-day appeal period has run, because holding otherwise would allow a litigant to artificially extend their appeal deadline. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 230 (D.D.C. 2011). Sixty days from the Court's order would be November 27, and thus Plaintiffs clear that bar. It has been less than two months since the Court's order was entered, and Plaintiffs moved expeditiously to gather new and additional factual information, file their proposed amended complaint, and litigate their motion for leave.

In at least some cases, the D.C. Circuit has held that it is abuse of discretion to find a Rule 60(b) motion untimely if there is no finding of prejudice to the non-moving party. *See Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1119 (D.C. Cir. 2011). Defendants did not argue that Plaintiffs' proposed amended complaint would prejudice them, and given the "infancy" of this case, it is unlikely that this Rule 60(b) motion will either. *See Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 55 (D.D.C. 2019) (Contreras, J.).

Accordingly, if the Court did intend to dismiss Plaintiffs entire case with prejudice, it should not have, and relief is appropriate under Rule 60(b).

## III. The Court should grant leave under Rule 15(a)(2).

### A. There has been no undue delay.

Moving to the substance of Plaintiffs' motion for leave, Defendants' undue delay argument is quickly dispensed with. *See* Opp'n 7.

First, to the extent Defendants argue that undue delay is enough to deny leave to amend without consideration of prejudice, they are wrong. As both of Defendants' cited cases recognize, "[c]onsideration of whether delay is undue. . . should *generally* take into account the actions of other parties and the possibility of any resulting prejudice." *Daugherty v. Sheer*, 2023 WL 6380539, at *3 (D.C. Cir. Oct. 2, 2023) (quoting *Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996)). Defendants have not even attempted to demonstrate prejudice, and thus Defendants have failed to meet their burden to defeat amendment. *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) ("If no prejudice to the non-moving party is found, the amendment will be allowed." (cleaned up)); *see also In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 33 (D.D.C. 2003) ("[D]elay without resulting prejudice to [the plaintiff] is not sufficient to warrant denial of plaintiffs' motion.").

Second, there has been no undue delay. The best Defendants have come up with is that some of the statements in the proposed amended complaint were made (not discovered) just *weeks* before the Court's motion-to-dismiss order. Opp'n 7. That is not even close to the line. *See Watson v. D.C.*, 2026 WL 3135200, at *9 (D.D.C. Oct. 20, 2026) (finding no undue delay in three-month gap between obtaining the evidence and moving to amend); *Ramos v. Barr*, 2020 WL 13695151, at *3 (D.D.C. Aug. 11, 2020) ("A court may deny a motion to amend for undue delay when the request comes years after the initial complaint."), *aff'd sub nom. Ramos v. Garland*, 77 F.4th 932 (D.C. Cir. 2023); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) (upholding a denial of leave to amend to add a new allegation and a new defendant more than three years after

litigation began), *cert. denied*, 435 U.S. 969 (1978); *Hill v. U.S. Dep't of Def.*, 70 F. Supp. 3d 17, 20 n.3 (D.D.C. 2014) (finding no undue delay where dispositive motion ruling came "approximately five months prior to [plaintiff]'s motion to amend"). In *Connecticut v. U.S. Department of Interior*, the Court granted a request to amend at a comparable juncture—weeks after dismissal of Plaintiffs' complaint and about a year since filing suit—even where "Plaintiffs had the information necessary to amend their initial complaint before this Court dismissed it" because the rest of the circumstances counseled in favor of amendment. 363 F. Supp. 3d at 55–56.[2]

**B. The proposed amendments are not futile.**

Defendants' arguments that Plaintiffs' proposed amendments are futile fail to grasp the import of those amendments.

Defendants' first argument appears to be a *very* truncated attempt at a comparator analysis between Plaintiffs and others who may have been similarly situated but were not transferred. Opp'n 6. First, this argument is intensely factual, and Defendants get the facts of the proposed amended complaint wrong. Plaintiffs may have described the office as being "responsible for enforcing fair housing and civil rights laws," but they never said that "the entire office did the same work" as each Plaintiff. *See* Opp'n 6. Plaintiffs described specific fair housing work that they did previously that they believe contributed to their targeting. Am. Compl., Dkt. No. 18-1, ¶ 45. To the extent Defendants want to argue that everyone in the Office of Fair Housing worked on those specific projects, that is well outside the facts of the amended complaint, and they are going to have to wait until summary judgment. Nor, according to the amended complaint, is it true that "the office continued to do the same work after Plaintiffs were transferred." Opp'n 6. The

[2] And unlike in *Connecticut*, there are no allegations of "gamesmanship" by Plaintiffs in this case. *See* 363 F. Supp. 3d at 57.

proposed amended complaint alleges that HUD officials tasked other agency attorneys with different fair housing work—changing their litigating position on existing matters and dropping some work altogether—and then systematically excluded Plaintiffs from that work based on HUD's perception of their previous fair housing work. *See* Am. Compl. ¶¶ 6–9, 45, 83, 85. The crux of the complaint is no longer that Plaintiffs were transferred because they did fair housing work generally; it was because of the specific fair housing work they did in the past.

Even if there were employees in the Office of Fair Housing that also did disfavored fair housing work previously, that would not defeat these Plaintiffs' claims. It is well established that an employer does not have "license to discriminate against some employees on the basis of [a protected characteristic] merely because [it] favorably treats other members of the employees' group." *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 570–71 (D.C. Cir. 2019) (quoting *Connecticut v. Teal*, 457 U.S. 440, 454–55 (1982) (alteration in original)). And as Plaintiffs allege, Defendants originally sought to eliminate the entire office in an attempt to target even more fair housing lawyers, and resorted to these more targeted reassignments only after that plan failed. *See* Am. Compl. ¶¶ 48–51. The proper inference, then, is that HUD punished as many members of the disfavored group as possible while maintaining their chosen pretext.

Defendants' second argument, that certain new quotations are not sufficiently tied to Plaintiffs' transfers, is also unconvincing. As an initial matter, Defendants' argument on this point appears limited to Mr. Trainor's statements, as they make no mention of any of Plaintiffs' other new allegations. *See* Opp'n 6. Setting aside Mr. Trainor's statements, Plaintiffs also included important new statements from an "OGC official involved in the transfer decisions" that were directed explicitly at OFH attorneys. Am. Compl. ¶¶ 6, 83. As for Mr. Trainor's statements, there is every reason to believe those statements referred to Plaintiffs. Regardless of when he was

confirmed, he was a high-level official at HUD when the statements were made, and he would have had full access to information about things that happened before his confirmation, including Plaintiffs' transfers. And Defendants suggestion that Mr. Trainor's statements about "sly bureaucrats" pursuing fair housing cases might not have been referring to Plaintiffs strains credulity, Opp'n 6–7, given that they were career civil servants pursuing fair housing cases during the era targeted by Mr. Trainor. At very least, that is an inference that must be drawn in Plaintiffs' favor at the motion-to-dismiss stage. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted).

And Defendants' third argument, that the new allegations are no different from the old allegations, appears to simply misread the statements. Plaintiffs' allegations are related to, but different in kind, from those in their original complaint. The new statements do not "describe personnel and resource-allocation decisions made in response to changing administrative priorities." Opp'n 7 (citing Op. 28). The amendments demonstrate why the decisions were made in the first place, including decisionmakers' belief that the change in OFH's work was "probably not the kind that [Plaintiffs] wanted." Am. Compl. ¶ 83. Indeed, the statement makes clear that the decisions at issue were about Plaintiffs as individuals, rather than about some larger staffing project. And the new allegations undercut the any argument that the reassignments were in *response* to administrative priorities, as the priorities did not exist at the time HUD began planning to target these lawyers. *See* Am. Compl. ¶ 77.

* * *

As "none of the legitimate reasons [such as undue delay, futility, bad faith, or prejudice] that may justify denial of leave to amend" are present, Plaintiffs' first request for leave to amend their complaint should be granted. *Firestone*, 76 F.3d at 1209.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Clayton L. Bailey*

Clayton L. Bailey (DC Bar No. 1644867)
Margaret (Emmy) Wydman (DC Bar No. 90007646)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7840
cbailey@civilservicellp.com

*Counsel for Plaintiffs*